No. 3--04--0056

_________________________________________________________________

 IN THE 

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2005

RONALD P. AND CATHERINE E.     )  Appeal from the Circuit Court

BOMBLISS,                      )  of the 9th Judicial Circuit, 

                               )  Knox County, Illinois,

Plaintiffs-Appellants,    ) 

           ) 

v.      ) 

                          )               ANNE AND JIM CORNELSEN,        )  No. 03--L--44

                               ) 

     Defendants-Appellees,     )           

 )

Judy Nowland,                  )  Honorable

 )  James B. Stewart,

Defendant,                )  Judge Presiding. 

________________________________________________________________

JUSTICE McDADE delivered the opinion of the court:  

________________________________________________________________ 

Plaintiff dog breeders, Ronald P. and Catherine E. Bombliss, filed a complaint in the circuit court alleging that the defendant dog breeders, Anne and Jim Cornelsen and Judy Nowland, committed tortious interference with prospective business advantage, defamation, false light invasion of privacy and intentional infliction of emotional distress.  The Cornelsens, residents of Oklahoma, and Nowland, a resident of Washington, filed special and limited appearances and moved to dismiss the complaint for lack of 
in
 
personam
 jurisdiction.  The trial court granted their motions, and plaintiffs appeal from the order granting the Cornelsens' motion.  The issue we are asked to determine is whether this state's long-arm statute permits Illinois courts to exercise personal jurisdiction over the Oklahoma defendants.  We conclude that it does; accordingly, we reverse and remand this cause for further proceedings. 

BACKGROUND

Plaintiffs' complaint alleges that both they and the Cornelsens are breeders of Tibetan mastiffs.  Plaintiffs' business in Knox County, Illinois, is known as "Kesang Camp Tibetan Mastiffs," and defendants' business in Wellston, Oklahoma, is called "Makalu Tibetan Mastiffs."  Plaintiffs alleged that defendants advertised or sold dogs in Illinois via the telephone, United States mail and the Internet.

In December 2001, Anne telephoned plaintiffs and informed them that she had two litters of Tibetan mastiff puppies.  Ron said he was interested in purchasing two females of breeding quality, and Anne offered to sell plaintiffs two pick-of-the- litter females for $2,000.

Plaintiffs allege that the dam of one of the litters, Drakyi Mulan, was co-owned by Richard Eichhorn of Simi Valley, California.  Eichhorn had provided a written guarantee that Mulan was free of genetic defects that would prevent breeding.  Pursuant to his agreement with the Cornelsens, he was entitled to odd-numbered pups from Mulan's first two litters by a sire of Eichhorn's choice.  However, in the event a genetic defect arose, Eichhorn would not take any puppies.  The complaint alleges that Anne was angry with Eichhorn, because he had delivered Mulan to defendants infected with roundworms and ticks.  Anne told plaintiffs that she wanted to prevent Eichhorn from getting any of Mulan's pups. 

On January 9, 2002, plaintiffs traveled to Oklahoma to see the puppies.  During their visit, they observed that Mulan and some of her pups appeared sick and worm-infested.  They urged Anne to get the sick puppies to the veterinarian immediately.  They selected one healthy female from each litter and paid the agreed price with the understanding that the Cornelsens would guarantee the puppies as breeding stock, free from genetic diseases or defects, for up to three years.  According to the complaint, Anne waited until January 24, 2002, to take one of the sick pups to the veterinarian, and at that time it was confirmed that the pup had pneumonia.

In March 2002, Anne posted a message in a Tibetan mastiff chat room on the Internet seeking advice as to why one of the three-month-old pups from Mulan's litter was critically ill, even though it had been wormed.  She subsequently posted messages stating that she believed the puppy suffered from a genetic disease and that all of the puppies from that litter should be spayed or neutered and none should be bred.  Nevertheless, in April, Anne completed American Kennel Club (AKC) registration papers for Mohanna, one of the sick puppy's littermates that had been sold to plaintiffs in January, indicating that the puppy was "for breeding."  She forwarded the papers by United States mail to plaintiffs' home in Illinois.

Plaintiffs further alleged that, after learning of Anne's chat room postings in July 2002, they did blood tests on Mohanna in July 2002 and June 2003.  The tests indicated that Mohanna may have suffered from environmental abuse, but the condition had cleared up, and she did not have any genetic disorders.  Plaintiffs claimed that defendants knowingly published false statements about Mohanna's genetic line to retaliate against Eichhorn, and that, as a consequence, negotiations with several potential puppy customers had fallen through.  Plaintiffs also claimed that they were denied membership in Internet discussion groups, and that defendants' comments impeached their integrity and impaired their good reputations.  

Defendants specially appeared and moved to quash service of process and dismiss the complaint for lack of personal jurisdiction.  In support of the motion, they filed an affidavit stating that they maintained an interactive website that allowed potential customers in foreign jurisdictions to communicate with them regarding the sale of pups, but all sales took place in Oklahoma.  They further averred that none of the chat rooms mentioned in plaintiffs' complaint was set up or operated in Illinois.  

Plaintiffs objected and filed an affidavit stating that defendants had used YAHOO! chat rooms and discussion groups accessible worldwide to spread unfounded rumors of a genetic defect in Mohanna.  They further stated that defendants had telephoned them and used the United States postal service and e-mail to communicate directly with them at plaintiffs' residence in Illinois.

The trial court determined that plaintiffs failed to show that defendants' acts were sufficient to establish personal jurisdiction under this state's long-arm statute (735 ILCS 5/2--209 (West 2002)).  Plaintiffs appeal.

ISSUE AND ANALYSIS

Plaintiffs argue that specific 
in
 
personam
 jurisdiction is established either because the Cornelsens intentionally directed tortious activities at the Illinois plaintiffs or because the assertion of jurisdiction comports with the due process clauses of the Illinois and United States Constitutions.  735 ILCS 5/2--209(a)(2), (c) (West 2002).  The cause comes to this court solely on the basis of the pleadings and supporting documents; therefore, our review is 
de
 
novo
.  
Viktron Ltd. Partnership v. Program Data Inc.
, 326 Ill. App. 3d 111, 759 N.E.2d 186 (2001).

Specific jurisdiction refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.  
RAR, Inc. v. Turner Diesel, Ltd.
, 107 F.3d 1272 (7th Cir. 1997).  Relevant to our inquiry are the following provisions of the Illinois long-arm statute:

"(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

*** 

(2) The commission of a tortious act within this State;

* * *

(c) A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."  735 ILCS 5/2--209(a)(2),(c) (West 2002).

Subsection (c) has been interpreted to mean that, if contacts between the defendant and Illinois are sufficient to satisfy due process under the state and federal constitutions, no further inquiry is necessary to satisfy the statute.  
Zazove v. Pelikan, Inc.
, 326 Ill. App. 3d 798, 803, 761 N.E.2d 256, 260 (2001), citing 
W.R. Grace & Co. v. CSR Ltd.
, 279 Ill. App. 3d 1043, 666 N.E.2d 8 (1996).  Accordingly, if the constitutional guarantees of due process are satisfied in this case, we need not determine whether plaintiffs have established jurisdiction under the alternative "tortious act" provision.

A.  Federal Due Process

 The assertion of specific 
in
 
personam
 jurisdiction satisfies federal due process guarantees so long as the defendant has sufficient "minimum contacts" with the forum state, such that maintaining an action there comports with "traditional notions of fair play and substantial justice."  
International Shoe Co. v. Washington
, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945).  "Minimum contacts" must involve acts by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protection of its laws.  
Hanson v. Denckla
, 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958); 
Asahi Metal Industry Co. v. Superior Court of California
, 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987).  The defendant's conduct with respect to the forum state must be such that he would reasonably anticipate being haled into that state's court.  
World-Wide Volkswagen Corp. v. Woodson
, 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980).  The factors a court must consider include (1) whether the defendant has sufficient minimum contacts with the forum state, (2) whether the cause of action arises out of these contacts, and (3) whether it is reasonable to require the defendant to litigate in the forum state.  
Viktron
, 326 Ill. App. 3d at 121, 759 N.E.2d at 196, (citing 
Autotech Controls Corp. v. K.J. Electric Corp.
, 256 Ill. App. 3d 721, 628 N.E.2d 990 (1993), and 
Burger King Corp. v. Rudzewicz
, 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).  We analyze each factor in turn.

1.  Minimum Contacts

When the parties have a contractual relationship, minimum contacts may be shown by the parties' negotiations preceding their agreement, the course of dealing between the parties, the terms of the agreement and foreseeable future consequences arising out of the agreement.  
Viktron
, 326 Ill. App. 3d 111, 759 N.E.2d 186.  Where the defendant is shown to have deliberately engaged in significant activities within the forum state or created ongoing obligations with a resident of the forum state, the defendant has accepted the privilege of doing business with the forum state, and it is not unreasonable to require him to litigate there.  
Burger King
, 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174.

In this case, plaintiffs allege that defendants telephoned plaintiffs at their residence in Illinois and initiated negotiations for the sale of pick-of-the-litter "breeding quality" puppies.  During that conversation, plaintiffs were invited to defendants' home in Oklahoma to select two puppies for $2,000.  One of the puppies selected, Mohanna, was from Mulan's litter, which defendants later claimed to be allegedly genetically defective.  After plaintiffs returned to Illinois, defendants forwarded AKC registration papers through the United States postal service to plaintiffs' Illinois residence documenting Mohanna's lineage and that she was sold "for breeding purposes." 

If the only contacts defendants had with Illinois consisted of a single telephone call and one mailing in connection with their sale of the two pups to plaintiffs, we might agree with the trial court that plaintiffs failed to establish sufficient minimum contacts to satisfy due process.  But, plaintiffs insist, there was more.

Plaintiffs allege, and defendants agree, that defendants  maintain an interactive commercial website advertising their pups and encouraging visitors to communicate with them about potential purchases of puppies via a direct link to defendants' e-mail address.  Moreover, plaintiffs allege, defendants' publication of untrue statements about Mohanna's lineage in Tibetan mastiff chat rooms constitutes activity in Illinois.  According to plaintiffs, defendants' statements targeted Mohanna and her littermates and falsely indicated that no genetically sound puppies would result from breeding Mohanna.  As a consequence, they allege, they lost potential customers for her pups.

The type of Internet activity that is sufficient to establish personal jurisdiction remains an emerging area of jurisprudence.  
Berthold Types Ltd. v. European Mikrograf Corp.
, 102 F. Supp. 2d 928 (N.D. Ill. 2000); 
Jennings v. AC Hydraulic A/S
, 383 F.3d 546 (7th Cir. 2004).  For ease of analysis, a "sliding scale" approach has been adopted.  
Zippo Manufacturing Co. v. Zippo Dot Com, Inc.
, 952 F. Supp. 1119 (W.D. Pa. 1997).  At one end, jurisdiction may be asserted if the defendant transacts business in foreign jurisdictions via an interactive website where contracts are completed online and the defendant derives profits directly from web-related activity.  At the opposite end of the scale, jurisdiction does not attach where the nonresident maintains a passive website that merely provides information about the defendant's products.  
Jennings
, 383 F.3d 546.  Between these types of websites lies a third category that is interactive, in that it allows customers in foreign jurisdictions to communicate regarding the defendant's services or products.  
Berthold Types
, 102 F. Supp. 2d at 932-33, citing 
Zippo
, 952 F. Supp. 1119.  This third category may or may not be sufficient to assert 
in
 
personam
 jurisdiction, depending on the level of interactivity and the commercial nature of the information exchanged.  
Berthold Types
, 102 F. Supp. 2d 928.

It is clear to us that defendants' website falls within the third category.  If defendants' commercial website inviting prospective puppy purchasers to communicate with them by e-mail were the full extent of their internet activity, we would not find sufficient purposeful contacts with Illinois to assert long arm jurisdiction.  See 
Jennings
, 383 F.3d 546.  However, the pleadings at issue establish that defendants' activity in the Tibetan mastiff chat rooms also concerned the dog breeding business and should be considered, especially since defendants' messages in the chat rooms pertained to the lineage of plaintiffs' AKC-registered, "breeding quality" pup in Illinois.

In our opinion, the totality of defendants' activities in Illinois, including (1) the contract negotiations and follow-up AKC registration of Mohanna, (2) maintenance of a commercial interactive website, and (3) use of Tibetan mastiff chat rooms to reach potential customers of Tibetan mastiff breeders, including plaintiffs, were of sufficient quantity and quality to constitute minimum contacts in Illinois under federal due process analysis.  See 
Berthold Types
, 102 F. Supp. 2d at 933-34, citing 
Digital Equipment Corp. v. AltaVista Technology, Inc.
, 960 F. Supp. 456 (D. Mass. 1997).

2.  "Arising Out Of"

Next, we must consider whether plaintiffs' cause of action arose out of defendants' contacts with Illinois.  This question is easily resolved in plaintiffs' favor.  Plaintiffs' primary complaint is of tortious interference with prospective business advantage.  According to the complaint, defendants' initial contact was by telephone, offering to sell "pick-of-the-litter" female pups to plaintiffs.  They followed up on the agreement with a contact by mail, forwarding AKC registration papers to plaintiffs' home showing that Mohanna was "for breeding."  They subsequently published allegedly false information about Mohanna's lineage in Internet chat rooms targeting Tibetan mastiff owners and breeders, again reaching into Illinois and adversely affecting plaintiffs' Illinois dog-breeding operation.  Accordingly, it is clear that defendants' contacts with Illinois gave rise to plaintiffs' cause of action.

3.  Reasonableness of Forum

Next, we consider whether it is reasonable to require defendants to litigate in Illinois.  Again, several factors guide this inquiry: (1) the burden on the defendant of defending the action in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the action; and (5) the shared interests of the several states in advancing fundamental social policies.  
World-Wide Volkswagen
, 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559.  If the plaintiff has established that the defendant purposely directed his activities at the forum state, it is the defendant's burden to show that litigating the dispute in that state would be unreasonable.  
Burger King
, 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174.

Here, plaintiffs have shown that defendants purposely directed their activities at Illinois by initiating negotiations with regard to the sale of two pups.  Defendants also purposely posted messages in Internet chat rooms impugning the genetic integrity of Mohanna and her littermates.  Even if, as plaintiffs allege, defendants' primary purpose was to cover up a breach of their contractual obligation with Eichhorn in California, they reasonably should have anticipated that messages to other Tibetan mastiff breeders and owners would cause economic damage to plaintiffs' Illinois dog-breeding enterprise.  Under the circumstances, it was defendants' burden to show that litigating the cause in Illinois would be unreasonable.  This, they have not done.

First, defendants have not shown that it would be unduly burdensome for them to defend this action in Illinois.  It would appear that most of the documentary evidence and some of the witnesses are situated in Illinois.  The inconvenience to defendants of litigating here is no more burdensome to them than the inconvenience of litigating in Oklahoma would be to plaintiffs.

Turning to the second factor, Illinois has a strong interest in providing its residents with a convenient forum.  See 
Viktron
, 326 Ill. App. 3d at 124, 759 N.E.2d at 198, citing 
Burger King
, 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174.  Third, any damages sustained by plaintiffs would have affected their interests in Illinois.  And, finally, defendants have advanced no compelling argument for finding that litigating the cause in Oklahoma would serve the interstate judicial system, or that the shared interests of both states in advancing fundamental social policies would be better served by litigating in Oklahoma.

In sum, we find that plaintiffs have shown that the Cornelsens purposely directed their activities at Illinois. Accordingly, it was defendants' burden to show that it would be unreasonable to require them to litigate this action in Illinois, a burden they have not borne.  Having found that the Illinois court's assertion of 
in
 
personam
 jurisdiction over the Cornelsens does not offend federal due process concerns, we turn next to this state's due process protection. 

B.  Illinois Due Process

The Illinois due process guaranty allows the assertion of 
in
 
personam
 jurisdiction only if it is fair, just and reasonable to require a nonresident defendant to defend in Illinois, considering the quality and nature of the defendant's acts in Illinois or which affect interests located in Illinois.  
Viktron
, 326 Ill. App. 3d at 126, 759 N.E.2d at 200, quoting 
Rollins v. Ellwood
, 141 Ill. 2d 244, 275, 565 N.E.2d 1302 (1990).

For many of the same reasons that 
in
 
personam
 jurisdiction does not offend the federal constitution's due process protections, we also find that it is neither unfair nor unjust to hale the Cornelsens into this state to answer plaintiffs' charges.  The pleadings show that it was entirely foreseeable that the injury resulting from defendants' allegedly false assertions of genetic defects over the Internet would be felt primarily in Illinois.  We therefore conclude that the assertion of 
in
 
personam
 jurisdiction comports with this state's due process guaranty.

CONCLUSION

For the reasons stated, the judgment of the circuit court of Knox County granting the Cornelsens' motion to quash service of process and dismiss the suit for lack of jurisdiction is reversed, and the cause is hereby remanded for further proceedings.

Reversed and remanded.

LYTTON, J., concurs.

HOLDRIDGE, J., dissents.

JUSTICE HOLDRIDGE, dissenting:

I agree with the majority's statement of the law governing this issue.  I disagree, however, with the majority's application of the law to the instant facts.  The factors articulated in 
Viktron Ltd. Partnership v. Program Data Inc.
, 326 Ill. App. 3d 111, 121 (2001), indicate that minimum contacts with Illinois are not enough to invoke long-arm jurisdiction; those contacts must also constitute a basis from which the cause of action arises.  The instant cause of action arose out of information placed on the Internet by Anne (an Oklahoma resident).  She provided the information in the spirit of mere communication.  Her message was not limited to any particular state, and she did not use the message to transact any business in Illinois.  I simply disagree with the majority's decision to nonetheless extend Illinois jurisdiction based on the "totality" of Anne's actions.  The actions that matter do not warrant Illinois jurisdiction.

For these reasons, I respectfully dissent.