2019 IL App (1st) 182416
No. 1-18-2416
September 30, 2019

FIRST DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JOHN DIXON, | ) | Appeal from the Circuit Court |
| | ) | Of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | No. 18 L 005429 |
| v. | ) | |
| | ) | The Honorable |
| GAA CLASSIC CARS, LLC, | ) | Daniel J. Kubasiak, |
| | ) | Judge Presiding. |
| Defendant-Appellee. | ) | |

JUSTICE WALKER delivered the judgment of the court, with opinion.
Presiding Justice Griffin and Justice Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1        John Dixon sued GAA Classic Cars, LLC (GAA) for fraudulent misrepresentations in connection with the sale of an automobile at an auction livestreamed over the internet from North Carolina. The circuit court granted GAA's motion to dismiss the complaint for lack of personal jurisdiction. We hold Dixon's allegations that GAA sent fraudulent advertisements, emails, and phone calls to Illinois, and made fraudulent misrepresentations on its website,

suffice to give Illinois courts personal jurisdiction over GAA. We reverse the circuit court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3        On January 25, 2018, plaintiff John Dixon saw an advertisement posted by GAA on a car-related website. The advertisement listed a 1973 Ford Bronco for sale at auction. Dixon responded to the advertisement by sending an email to GAA requesting more information about the Bronco including how to bid for it. GAA responded with an email to Dixon, inviting Dixon to bid on the Bronco at the auction scheduled for March 2, 2018. GAA's email told Dixon he could participate "via live simulcast bidding or on the telephone via phone bidding." GAA added that Dixon could find more information about the Bronco at GAA's website. Dixon, via email, asked for pictures of the Bronco's engine. GAA again responded by email that it would send him pictures of the engine once GAA received the Bronco from its owner. GAA told Dixon that the auction price for the Bronco should "run around $30,000.00 - $40,000.00."

¶ 4        Dixon spoke telephonically with an agent of GAA on February 6, 2018. They discussed registration for the March auction, and the agent offered to email the forms that Dixon needed to return for participation in the auction. In a subsequent phone conversation, GAA reaffirmed the representations it made in the advertisement, that the owner had the Bronco "Frame Off Restored in 2017" with "New Brakes & Tires," and the Bronco was "Garage Kept & Frequently Driven Since Restoration." GAA's agent added that the Bronco was rated "4.5 out of 5." Dixon returned the signed registration form to GAA, and GAA forwarded a

photograph of the Bronco via text message to Dixon's cellphone. On February 27, 2018, GAA sent Dixon two photographs of the Bronco's engine.

¶ 5    GAA telephoned Dixon on March 2, 2018, at his Illinois telephone number, to obtain Dixon's bids on the Bronco. Dixon watched GAA's simulcast of the auction, and in the simulcast, GAA again said the Bronco was "frame off restored." Dixon bid $37,000 for the Bronco, and he was the highest bidder. GAA emailed a bill of sale to Dixon, along with payment instructions. Dixon hired the shipping transport company GAA recommended to ship the Bronco to Illinois. On March 13, 2018, Dixon received the Bronco, and he immediately recognized that it had significant problems because GAA had misrepresented the Bronco's condition.

¶ 6    Dixon had the Bronco towed to a mechanic "well-versed in the repair, building, and restoration of 1973 Ford Broncos." The mechanic determined that the Bronco:

"(1) was not 'frame off' restored; (2) was in a mechanically and electrically unsafe condition; (3) contained significant material defects that were purposefully hidden to conceal their discovery and identity; (4) had significant safety issues that were hidden to conceal their discovery and identity; (5) was inoperable and could not have been 'frequently drive[n]' as represented by Defendant; (6) did not have 'new brakes' as represented by Defendant; (7) had a steering stabilizer that was worn out and leaking; (8) did not have an operable heating system; (9) had an illegally oversized right rear drum; (10) had cut electrical wires controlling the turn signal connector, windshield wiper, and interior lights; (11) contained an engine that was

not original and had been improperly modified; and (12) was not, by any means, in a condition where it would receive a '4.5/5' rating."

¶ 7  In May 2018, Dixon filed a complaint against GAA. The complaint, as amended, alleged negligent misrepresentation, fraudulent misrepresentation, deceptive practices, and fraudulent concealment. GAA filed a motion to dismiss the first amended complaint for lack of jurisdiction. GAA, a North Carolina corporation with its principal place of business in Greensboro, North Carolina, argued it did not have on-going activity in Illinois and never purposely availed itself of the privilege of conducting business in Illinois.

¶ 8  The circuit court granted GAA's motion, finding that the circuit court lacked specific personal jurisdiction over GAA because GAA did not have sufficient contacts with the state of Illinois. Dixon now appeals.

¶ 9                                    II. ANALYSIS

¶ 10  On appeal, Dixon argues he alleged facts showing that Illinois courts have personal jurisdiction over GAA. Because the circuit court decided the jurisdictional issue solely on documentary evidence, we review the ruling *de novo*. *Wiggen v. Wiggen*, 2011 IL App (2d) 100982, ¶ 20.

¶ 11  Illinois courts have general jurisdiction over a nonresident defendant only if the defendant's "affiliations with the State in which suit is brought are so constant and pervasive []as to render [it] essentially at home in the forum State.[]" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). Dixon does not argue that Illinois courts have general jurisdiction over GAA. Thus, we address only the issue of whether Dixon met his burden of alleging facts

that establish a prima facie case for specific jurisdiction over GAA. See *Wiggen*, 2011 IL App (2d) 100982, ¶ 20.

¶ 12        "Specific jurisdiction requires a showing that the defendant purposefully directed its activities at the forum state and the cause of action arose out of or relates to the defendant's contacts with the forum state. [Citation.] Under specific jurisdiction, a nonresident defendant may be subjected to a forum state's jurisdiction based on certain []single or occasional acts[] in the state but only with respect to matters related to those acts." *Russell v. SNFA*, 2013 IL 113909, ¶ 40.

¶ 13        Dixon points to several alleged acts by which GAA directed its activities to Illinois. GAA posted an advertisement on a website that reached a national audience. GAA sent emails to Dixon in Illinois, and those emails included forms for Dixon to fill out to enter the auction and to complete the purchase of the Bronco. The emails included a link to GAA's website, which also reached a national audience. In the emails and in phone calls, GAA invited Dixon to participate in the auction by watching it as GAA simulcast it on its website. GAA engaged in several telephone conversations with Dixon, and GAA called him in Illinois on March 2, 2018, to solicit his bid for the Bronco.

¶ 14        "The type of Internet activity that is sufficient to establish personal jurisdiction remains an emerging area of jurisprudence." *Bombliss v. Cornelsen*, 355 Ill. App. 3d 1107, 1114 (2005). Generally, "a website that provides only information does not create the minimum contacts necessary to establish personal jurisdiction over a defendant." *Illinois v. Hemi Group LLC*, 622 F.3d 754, 759 (7th Cir. 2010). In ruling that Illinois courts had personal jurisdiction over Hemi Group, the *Hemi Group* court found,

"Hemi created several commercial, interactive websites through which customers could purchase cigarettes from Hemi. Hemi held itself out as open to do business with every state (including Illinois) except New York. After the customers made their purchases online, Hemi shipped the cigarettes to their various destinations. It is Hemi reaching out to residents of Illinois, and not the residents reaching back, that creates the sufficient minimum contacts with Illinois that justify exercising personal jurisdiction over Hemi in Illinois." *Hemi Group*, 622 F.3d at 758.

¶ 15     Similarly, operating a website that permitted Illinois users to submit payment online for goods and services sufficed to give Illinois courts jurisdiction over the nonresident defendant in *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421 (7th Cir. 2010). GAA's website included information on cars for sale to customers in all states, and it simulcast an auction in which GAA solicited bids from all across the country.

¶ 16     GAA also sent emails to Dixon in Illinois, including forms and instructions that served as an integral part of its extraction of money from Dixon. "Emails may be properly considered in minimum contacts analyses, especially if they were purposefully sent to a forum resident knowing that they would 'most likely' be read in the forum." *Levin v. Posen Foundation*, 62 F. Supp. 3d 733, 740 (N.D. Ill. 2014); *quoting Felland v. Clifton*, 682 F.3d 665, 676, n. 3 (7th Cir. 2012). In *Bryant v. Smith Interior Design Group, Inc.*, 310 S.W.3d 227, 229 (Mo. 2010), the Missouri Supreme Court found that Missouri courts had jurisdiction over a nonresident defendant who "sent e-mails and fraudulent or misleading documents into Missouri with the intent to defraud [the plaintiff] and to conceal the true nature of [the defendant's] commission charges, resulting in harm to [the plaintiff] in Missouri."

¶ 17      Dixon alleged that in the advertisement and in his telephone conversations with GAA, GAA misrepresented the condition of the Bronco. Dixon alleged that GAA stated, falsely, that the Bronco's owner had the Bronco "frame off restored in 2017," with "new brakes," the Bronco was "frequently driven since 2017," and rated "4.5/5." Fraudulent statements in telephone calls gave Illinois courts jurisdiction over out of state defendants in *Khan v. Gramercy Advisors, LLC*, 2016 IL App (4th) 150435, and *Zazove v. Pelikan, Inc.*, 326 Ill. App. 3d 798 (2001). The *Zazove* court found, "in cases of fraudulent misrepresentation, reaching out to Illinois residents, whether by mail, telephone, telex or facsimile, with an intent to affect Illinois interests, can be a sufficient basis for exercising personal jurisdiction over a nonresident defendant." *Zazove v. Pelikan, Inc.*, 326 Ill. App. 3d at 806. The *Khan* court added, "[o]nly a trivial, formalistic distinction can be made between someone who utters a fraudulent misrepresentation in person and someone who does so on the phone." *Khan v. Gramercy Advisors, LLC*, 2016 IL App (4th) 150435, ¶ 197.

¶ 18      *Andra v. Left Gate Property Holding, Inc.*, 453 S.W.3d 216 (Mo. 2015), has facts similar to the facts alleged here. Left Gate listed a vehicle for sale on the eBay auction website. Andra, using his computer in his Missouri home, saw Left Gate's listing. Andra clicked the "Buy It Now" button, which led to a series of phone calls, the mailing of a contract to Andra and then from Andra to Left Gate. Andra alleged in his complaint that the eBay listing included many false statements about the condition of the vehicle. The *Andra* court held:

> "Left Gate made intentional contacts directed toward Mr. Andra to further the sale of the vehicle, [and] allegedly made fraudulent representations about the features and conditions of the vehicle ***.

Even though Mr. Andra initiated the contract for the purchase of the vehicle by clicking the 'Buy It Now' button, 'the fact that someone else initiated the first contact does not mean that the entire course of conduct is considered unilateral.' *Bryant*, 310 S.W.3d at 235. *** Instead, the contract and communications must be evaluated in light of []contemplated future consequences, as well as the terms of the contract and the parties' course of dealings[.] [Citation.]

***

Left Gate's verbal representations over the telephone about the vehicle's features and condition created foreseeable future consequences when the vehicle did not live up to the customer's expectations. A defendant purposely avails itself of the privilege of conducting business in the forum state when it sends fraudulent misrepresentations into the state because the 'actual content of communication with [the] forum gives rise to intentional tort causes of action.' *Bryant*, 310 S.W.3d at 235." *Andra*, 453 S.W.3d at 229-31.

¶ 19 We find that *Andra* persuasively supports the conclusion that GAA's contacts with Dixon suffice to give the Illinois courts specific personal jurisdiction over GAA under the circumstances of this case.

¶ 20 GAA relies on federal cases for its argument that Illinois courts lack jurisdiction, and cites *Monco v. Zoltek Corp.*, 342 F. Supp. 3d 829 (N.D. Ill. 2018), in which the district court dismissed a complaint for failure to plead facts showing personal jurisdiction. The *Monco* court gave the plaintiffs an opportunity to amend the complaint to allege "phone and email communications and sustained contact with Plaintiff[] in Illinois []related to the claims

8

raised," because federal cases hold that "email communications directed at plaintiff in Illinois related to the fraud, combined with plaintiffs' injury in Illinois, established specific personal jurisdiction." *Monco*, 342 F. Supp. 3d at 836-37. Under the standards applied in *Monco*, Dixon has sufficiently alleged facts establishing that GAA has sufficient contacts with Illinois to give Illinois courts specific personal jurisdiction over GAA for purposes of adjudicating Dixon's claims.

¶ 21 Illinois courts "must consider whether the exercise of personal jurisdiction over [a nonresident defendant] would offend traditional notions of fair play and substantial justice." *Levin*, 62 F. Supp. 3d at 741. "[S]everal factors guide this inquiry: (1) the burden on the defendant of defending the action in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the action; and (5) the shared interests of the several states in advancing fundamental social policies." *Bombliss*, 355 Ill. App. 3d at 1115. Because Dixon "has established that the defendant purposely directed his activities at the forum state, it is the defendant's burden to show that litigating the dispute in [this] state would be unreasonable." *Bombliss*, 355 Ill. App. 3d at 1115. We find the reasoning of *Bombliss* applicable here:

"First, defendants have not shown that it would be unduly burdensome for them to defend this action in Illinois. It would appear that most of the documentary evidence and some of the witnesses are situated in Illinois. The inconvenience to defendants of litigating here is no more burdensome to them than the inconvenience of litigating in [North Carolina] would be to plaintiffs.

9

Turning to the second factor, Illinois has a strong interest in providing its residents with a convenient forum. [Citation.] Third, any damages sustained by plaintiffs would have affected their interests in Illinois. And, finally, defendants have advanced no compelling argument for finding that litigating the cause in [North Carolina] would serve the interstate judicial system, or that the shared interests of both states in advancing fundamental social policies would be better served by litigating in [North Carolina]." *Bombliss*, 355 Ill. App. 3d at 1116.

¶ 22       GAA, like the defendant in *Bombliss*, has not met its burden of showing that Illinois will not provide a reasonable forum for this litigation. We hold that (1) GAA's advertisement and its website, (2) sent into Illinois via the internet, (3) GAA's emails sent into Illinois, and (4) its phone calls with Dixon in Illinois, considered together, suffice to give Illinois courts specific personal jurisdiction over GAA for Dixon's claim that GAA made fraudulent misrepresentations in the advertisement, on its website, and over the telephone. All of these forms of communication allowed GAA to profit from its alleged fraud.

¶ 23       GAA argues that Illinois courts should not exercise jurisdiction over GAA because the bidder registration form Dixon signed stated: "By signing I do hereby affirm that I have read and agree to the GAA Classic Cars Terms & Conditions." GAA contends the registration form incorporates by reference a separate document titled "GAA Classic Cars Terms & Conditions," and that document required Dixon to sue GAA in North Carolina. GAA does not contend that it sent the "Terms" document to Dixon. GAA does not contend that in its emails and phone calls it told Dixon about the "Terms" document and how to access it. Small print on the face of the bidder registration form set out a number of terms for bidder

10

registration, and GAA repeated several of those terms in its "Terms" document. For example, the small print informed Dixon that all bids are final and the bidder must pay certain fees specified in the small print. Notably, the terms on the face of the bidder registration form make no reference to any limit on the location of litigation. The bidder registration form does not indicate that the "Terms" appear only on another document and not on the bidder registration form.

¶ 24    "Generally, one instrument may incorporate another instrument by reference. [Citation.] The contract must show an intent to incorporate the other document and make it part of the contract itself." *Turner Construction Co. v. Midwest Curtainwalls, Inc.*, 187 Ill. App. 3d 417, 421 (1989). "The parties to a contract may incorporate by reference another document if that intention is clearly shown on the face of the contract." *Jago v. Miller Fluid Power Corp.*, 245 Ill. App. 3d 876, 879 (1993). The bidder registration form does not specify that the reference to "Terms" incorporates another document. Because the face of the bidder registration form does not clearly show an intent to incorporate a separate document, we find no incorporation here. The bidder registration form does not require litigation in North Carolina. Accordingly, we hold that Illinois courts have specific personal jurisdiction over GAA for litigation concerning the misrepresentations GAA allegedly made to Dixon about the Bronco.

¶ 25                                III. CONCLUSION

¶ 26    Dixon adequately alleged that GAA directed its activities to Illinois by sending advertisements, emails, and phone calls into Illinois, and by using its website to reach customers in Illinois. Dixon also adequately alleged that GAA used the advertisements, emails, and phone calls to make fraudulent misrepresentations and to complete a fraudulent

11

transaction. GAA did not meet its burden of showing that Illinois would not provide an appropriate forum for litigation concerning the misrepresentations. Because the registration form did not specifically incorporate the document in which GAA sought to limit litigation to North Carolina, the registration form does not mandate dismissal of the complaint. Accordingly, we reverse the circuit court's judgment and remand for further proceedings on the complaint.

¶ 27         Reversed and remanded.

**No. 1-18-2416**

| | |
|---|---|
| **Cite as:** | *Dixon v. GAA Classic Cars, LLC*, 2019 IL App (1st) 182416 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-L-005429; the Hon. Daniel J. Kubasiak, Judge, presiding. |
| **Attorneys for Appellant:** | Craig R. Annuziata, of Fisher & Phillips, LLP of Chicago, for appellant. |
| **Attorneys for Appellee:** | Marc C. Smith, of Fox Rothschild LLP., of Chicago, for appellee. |