# Illinois Official Reports

## Appellate Court

---

### *Capra v. Lipschultz*, 2020 IL App (1st) 192160

---

| | |
|---|---|
| Appellate Court Caption | DONNA CAPRA, KIM JONES, and DOUGLAS KILMAN, Individually and as Beneficiaries of the Audrey L. Krone Trust, Plaintiffs-Appellants, v. MARVIN G. LIPSCHULTZ, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>No. 1-19-2160 |
| Filed | June 30, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2018-CH-05596; the Hon. Raymond Mitchell, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | John D. Galarnyk, Andrew J. Cunniff, and John A. Romanucci, of Galarnyk & Associates, Ltd., of Chicago, for appellants.<br><br>Ronald H. Balson, of Stone Pogrund & Korey LLC, of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justices Lampkin and Burke concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiffs, Donna Capra, Kim Jones, and Douglas Kilman, are beneficiaries of the Audrey L. Krone Trust (trust) and filed suit against defendant, Marvin G. Lipschultz, the trustee of the trust, seeking an accounting. Defendant filed a motion to dismiss the complaint, claiming that Illinois courts lacked personal jurisdiction over him, a Nevada resident, and the trial court dismissed the complaint, finding that defendant lacked sufficient contacts with Illinois. On appeal, plaintiffs claim that defendant's actions with respect to the trust were sufficient to confer personal jurisdiction. For the reasons set forth below, we reverse and remand for further proceedings.

¶ 2                                    BACKGROUND

¶ 3    On April 30, 2018, plaintiffs filed a verified complaint in the circuit court of Cook County, seeking an accounting from defendant. The complaint alleged that plaintiffs were the nieces and nephew of Audrey Krone and the beneficiaries of her trust; Krone died in 2012 without any descendants, leaving an estate in excess of $3 million. The complaint alleged that the trust provided for annual distributions upon Krone's death and final distributions of the remainder upon a young relative's graduation from college, which occurred in 2017. Subsequently, defendant informed plaintiffs that the trust assets had been nearly depleted. Plaintiffs requested an accounting, with supporting documents, but defendant refused to provide the information, leading plaintiffs to file suit.

¶ 4    Attached to the complaint was a copy of the trust agreement, as well as six amendments to the trust agreement. The original trust agreement was dated October 19, 2000,[1] and provided that, upon Krone's death, the successor trustee was to divide the trust among several named beneficiaries; the trust agreement named defendant and the Northern Trust Company as successor cotrustees. The trust agreement further provided that "[t]he powers and duties of the Trustee hereunder and all questions of interpretation of this instrument shall be governed by the laws of the State of Illinois."

¶ 5    The amendments to the trust agreement made various changes to its provisions. As relevant to the instant appeal, the second amendment, dated November 24, 2003, named defendant as sole successor trustee. The sixth amendment,[2] dated August 1, 2007, added a provision stating that "[t]he situs of jurisdiction is hereby changed to the State of Nevada, and not Illinois, in every legal respect referred to throughout this Agreement and Amendments." However, the sixth amendment did not expressly remove the provision that "[t]he powers and duties of the Trustee hereunder and all questions of interpretation of this instrument shall be governed by the laws of the State of Illinois."

---

[1]The "original" trust agreement was actually the restatement of a trust agreement initially created on December 1, 1986, between Krone and her husband Fred. Fred predeceased Krone, dying on October 4, 2003.

[2]Plaintiffs challenge the authenticity of the paragraph containing this language, pointing to a number of anomalies between the paragraph and the rest of the amendment. However, we make no comment as to the paragraph's authenticity, as such a finding is not necessary to the disposition of the instant appeal.

¶ 6    On August 8, 2018, defendant filed a motion to dismiss the complaint due to a lack of personal jurisdiction, claiming that he was a resident of Nevada and had not resided in Illinois for 34 years, that he had not committed any acts or conducted any business in Illinois, and that he had not established sufficient minimum contacts within Illinois to justify the exercise of personal jurisdiction. Defendant further claimed that the "forum selection clause" contained in the sixth amendment to the trust agreement designated Nevada as the forum for any litigation, making jurisdiction in Illinois improper.

¶ 7    Attached to the motion to dismiss was defendant's affidavit, in which he averred that he was a resident of the state of Nevada, where he had resided continuously for 29 years, and had not resided in Illinois since 1984. Defendant averred that he did not own any real property in Illinois, did not own or maintain a business office in Illinois, and had not conducted any business in Illinois since 1985. Defendant averred that he became acquainted with Krone and her husband in the 1970s and that they lived near each other in San Diego in 1984. At the time of the initial trust agreement in 1986, defendant was residing in California, near Krone and her husband; at the time of the restatement of the trust agreement in 2000, defendant was living in Nevada, where he was also living at the time of the execution of each of the amendments to the trust agreement. Defendant averred that he was not present for the execution of any of the amendments, other than the sixth amendment, which was executed at Krone's home in California.

¶ 8    Defendant averred that, beginning in 2004, he began managing the trust assets from his office in Las Vegas and had continued to manage the assets in Nevada for the past 14 years. Defendant averred that portions of the trust assets were invested at financial institutions including several national banks, but that it was not necessary for him to travel to conduct trust business and all trust business was conducted from Nevada. Defendant further averred that "[n]o physical trust assets were located in Illinois." Defendant also averred that he had not transacted any trust business in the state of Illinois, but that "[f]rom time to time, [he] would prepare accountings in Nevada and send them to beneficiaries wherever they resided."

¶ 9    The parties engaged in discovery on the issue of jurisdiction, and following discovery, plaintiffs filed a response to the motion to dismiss, claiming that Illinois had both general and specific jurisdiction over defendant.[3] Plaintiffs argued that, since 2003, defendant had been the sole trustee of a trust created under Illinois law and that he also held power of attorney over Krone's healthcare and property, both of which were granted pursuant to Illinois law. Plaintiffs further argued that defendant had entered into contracts in connection with Krone's care in Illinois, namely, a contract with an assisted living facility in Carol Stream to provide care and housing for Krone and a contract with a funeral home in Itasca for Krone's funeral. Defendant also made regular payments to the assisted living facility from 2008 until Krone's death, made payments to Illinois healthcare providers for Krone's care, and made payments to two of the plaintiffs to provide care and assistance to Krone in exchange for regular monthly payments from the trust.

¶ 10    Plaintiffs also argued that, at the time that defendant became sole trustee, pursuant to the second amendment to the trust, the trust held over $1 million in assets in Illinois financial institutions, including Harris Bank, La Salle Bank, and Bank One. Plaintiffs claimed that over the following years, defendant transferred all of these Illinois accounts into out-of-state banks

_____

[3]On appeal, plaintiffs focus only on specific jurisdiction, so we limit our discussion to that issue.

or other investment vehicles. Plaintiffs additionally claimed that defendant regularly communicated with Illinois residents regarding the trust, mailed dozens of checks and other payments to plaintiffs in Illinois, and had personally traveled to Illinois on several occasions. Finally, plaintiffs claimed that jurisdiction was proper where a defendant breached a fiduciary duty or committed a tortious act within the state and claimed that "all available evidence" suggested that defendant lost or misappropriated over $1 million in assets while serving as trustee.

¶ 11    Plaintiffs also challenged defendant's claim that there was a "forum selection clause," arguing that the clause relied on by defendant was not a forum selection clause. Instead, plaintiffs claimed that it was, at best, a "consent to jurisdiction clause," which did not prevent an Illinois court from asserting jurisdiction. Alternatively, if it was considered a forum selection clause, plaintiffs argued that it should not be enforced as against public policy, as Illinois, not Nevada, was the appropriate forum for the instant litigation.

¶ 12    Attached to the response were a number of exhibits, including an affidavit of plaintiff Jones, who averred that the facts set forth in the response were true. Jones further averred that she currently lived in Illinois and had done so her entire life and that she regularly communicated with defendant through in-person meetings, telephone conversations, e-mails, and online communications. Jones averred that she had personal knowledge that defendant had visited Illinois on at least seven occasions between 2007 and 2010. Jones averred that Krone had moved to Illinois after her husband's death in 2003, moved to California for a time, then moved back to Illinois in 2007. Jones averred that Krone moved into an assisted living facility due to Alzheimer's disease and that defendant asked her and plaintiff Capra to assist with Krone's medical care and other personal needs in exchange for a monthly fee. Defendant sent those fees to Illinois, and plaintiffs received them in Illinois. Jones further averred that she personally met with defendant in Illinois regarding the trust and regarding Krone's care.

¶ 13    Jones averred that all of the current beneficiaries lived in Illinois and that, following Krone's death, defendant mailed distribution checks from the trust to them on at least an annual basis. Jones further averred that, other than the personal care that she and Capra provided, defendant handled all aspects of Krone's care, including paying her medical expenses in Illinois, paying her bills in Illinois, issuing regular payments to the assisted living facility in Illinois, and making payments for Krone's funeral in Illinois.

¶ 14    Also attached to the response were, *inter alia*, a copy of an Illinois statutory short form power of attorney for health care, dated February 3, 2004; a copy of a contract with the assisted living facility, signed by defendant on Krone's behalf; several subsequent amendments to the contract with the assisted living facility, again signed by defendant on Krone's behalf; and a copy of a contract for funeral expenses, showing payment by defendant.

¶ 15    Plaintiffs later supplemented their response to the motion to dismiss based on defendant's deposition testimony.[4] In addition to testimony concerning the facts raised previously, plaintiffs pointed to defendant's testimony that the trust agreement was prepared by an Illinois attorney and that the trust held assets in Illinois banks, which he transferred to other locations.

---

[4]Defendant had canceled his scheduled deposition due to illness prior to plaintiffs' filing of their response, and the trial court permitted plaintiffs to supplement the response once the deposition occurred.

¶ 16      On June 3, 2019, the trial court entered an order granting defendant's motion to dismiss. The court found that plaintiffs had failed to establish either general or specific jurisdiction, finding that defendant "operated the trust solely from Nevada and the complaint concedes that no trust assets exist in Illinois." The court found that plaintiffs had not shown that defendant purposefully availed himself of the privilege of conducting activities in Illinois and that the cause of action did not arise out of defendant's contacts with Illinois. Finally, the court pointed to the language of the sixth amendment changing the situs of jurisdiction to Nevada and found that it "may infer from this language that the trust is to be administered in Nevada, further supporting that the Court lacks jurisdiction" over defendant.

¶ 17      On July 3, 2019, plaintiffs filed a motion to reconsider, claiming that the trial court had not properly considered the relevant facts and law. In the alternative, plaintiffs sought leave to amend their complaint to add allegations of tortious conduct and violations of Illinois statutes that they claimed provided additional support for a finding of jurisdiction. Plaintiffs claimed that they had previously omitted these counts due to the trust's "no contest" clause, which would remove any beneficiary who challenged the amount of distributions through court action.

¶ 18      On September 23, 2019, the trial court entered an order denying plaintiffs' motion to reconsider. The trial court also denied plaintiffs' request to amend the complaint, finding that the proposed amended complaint failed to allege facts sufficient to establish personal jurisdiction over defendant. This appeal follows.

¶ 19                               ANALYSIS

¶ 20      On appeal, plaintiffs claim that the trial court erred in finding that defendant lacked sufficient contacts with Illinois to subject him to personal jurisdiction in the state; in the alternative, they argue that they should have been permitted to amend their complaint. A plaintiff has the burden of establishing a *prima facie* case for exercising jurisdiction over a nonresident defendant. *Russell v. SNFA*, 2013 IL 113909, ¶ 28; *Bolger v. Nautica International, Inc.*, 369 Ill. App. 3d 947, 949 (2007). When, as here, the trial court decides the issue of personal jurisdiction solely on documentary evidence and without an evidentiary hearing, our review is *de novo*. *Russell*, 2013 IL 113909, ¶ 28; *Bolger*, 369 Ill. App. 3d at 950. *De novo* consideration means we perform the same analysis that a trial judge would perform. *XL Specialty Insurance Co. v. Performance Aircraft Leasing, Inc.*, 2019 IL App (1st) 181031, ¶ 62. We resolve any conflicts among the documents in the plaintiff's favor for purposes of determining whether the plaintiff established a *prima facie* case. *Bolger*, 369 Ill. App. 3d at 950. However, a defendant may overcome a plaintiff's *prima facie* case of jurisdiction if he or she presents uncontroverted evidence defeating jurisdiction. *Russell*, 2013 IL 113909, ¶ 28; *Bolger*, 369 Ill. App. 3d at 950.

¶ 21      Section 2-209 of the Code of Civil Procedure (Code) (735 ILCS 5/2-209 (West 2016)), commonly referred to as the Illinois long-arm statute, governs the exercise of personal jurisdiction by an Illinois court over a nonresident defendant. *Russell*, 2013 IL 113909, ¶ 29. Historically, jurisdictional issues under the long-arm statute were subject to a two-part analysis, first determining whether a specific statutory provision of section 2-209 has been satisfied, then determining whether the due process requirements of the United States and Illinois Constitutions have been met. *Russell*, 2013 IL 113909, ¶ 29. However, section 2-209(c), referred to as the " 'catch-all provision,' " "broadly provides that a court 'may also

exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.' " *Russell*, 2013 IL 113909, ¶ 30 (quoting 735 ILCS 5/2-209(c) (West 2002)). Accordingly, when a plaintiff argues that personal jurisdiction is proper under subsection (c) of the Illinois long-arm statute, "the sole issue before the court is whether the nonresident defendant's connection or contact with Illinois is sufficient to satisfy federal and Illinois due process." *Russell*, 2013 IL 113909, ¶ 30; *Rios v. Bayer Corp.*, 2020 IL 125020, ¶ 17.

¶ 22    In the case at bar, plaintiffs argue that Illinois courts have personal jurisdiction over defendant both because he has submitted to jurisdiction by engaging in acts enumerated under subsection (a) and under the catch-all provision of subsection (c). As both avenues require a due process analysis, we begin with a discussion of whether defendant's connection with Illinois is sufficient to satisfy federal and Illinois due process. We note that defendant does not argue that Illinois due process protections differ from those under the United States Constitution on the issue of personal jurisdiction, so we need not consider them separately and discuss only federal constitutional principles. See *Russell*, 2013 IL 113909, ¶ 33; *Rios*, 2020 IL 125020, ¶ 17. We further note that, as a due process analysis focuses on the defendant's conduct, the bases of jurisdiction argued under section 2-209(a) "provide the groundwork for our analysis." *Aasonn, LLC v. Delaney*, 2011 IL App (2d) 101125, ¶ 12.

¶ 23    Due process requires that a nonresident defendant have certain minimum contacts with the forum state " 'such that maintenance of the suit there does not offend "traditional notions of fair play and substantial justice." ' " *Russell*, 2013 IL 113909, ¶ 34 (quoting *Wiles v. Morita Iron Works Co.*, 125 Ill. 2d 144, 150 (1988), quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Rios*, 2020 IL 125020, ¶ 18. This " 'minimum contacts' test" is the threshold issue in any personal jurisdiction challenge in Illinois. *Russell*, 2013 IL 113909, ¶ 36. In turn, "the relevant inquiry into whether the minimum contacts test has been satisfied depends on what category of personal jurisdiction is being sought—either general or specific." *Russell*, 2013 IL 113909, ¶ 36 (citing *Keller v. Henderson*, 359 Ill. App. 3d 605, 613 (2005)). While plaintiffs below claimed both types of jurisdiction were applicable, on appeal, they argue only specific jurisdiction. Accordingly, we focus our analysis on that issue.

¶ 24    "Specific jurisdiction requires a showing that the defendant purposefully directed its activities at the forum state and the cause of action arose out of or relate[d] to the defendant's contacts with the forum state." *Russell*, 2013 IL 113909, ¶ 40 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *Rios*, 2020 IL 125050, ¶ 20. Under specific jurisdiction, a nonresident defendant may be subjected to a forum state's jurisdiction based on certain single or occasional acts in the state, but only with respect to matters related to those acts. *Russell*, 2013 IL 113909, ¶ 40.

> "An Illinois court may assert specific jurisdiction over a nonresident defendant if: (1) the defendant had minimum contacts with Illinois such that it was fairly warned that it may be haled into an Illinois court; (2) the action arose out of or was related to the defendant's contacts with Illinois; and (3) it is reasonable to require the defendant to litigate in Illinois." *Aasonn*, 2011 IL App (2d) 101125, ¶ 14 (citing *MacNeil v. Trambert*, 401 Ill. App. 3d 1077, 1081 (2010)).

¶ 25    In the case at bar, the trial court found that plaintiffs had failed to show that defendant had purposefully availed himself of the privilege of conducting activities in Illinois and that the cause of action did not arise out of defendant's contacts with Illinois. Plaintiffs, however, claim

that they established that defendant had sufficient contacts with Illinois with respect to administration of the trust such that due process was satisfied. Examining the documentary evidence before the trial court, we find that defendant's contacts with Illinois were sufficient to subject him to personal jurisdiction in the instant case.

¶ 26     The court found that "[t]he uncontradicted facts show that [defendant] operated the trust solely from Nevada, and the complaint concedes that no trust assets exist in Illinois." However, "[a] defendant's lack of physical presence in a forum does not defeat jurisdiction there." *Aasonn*, 2011 IL App (2d) 101125, ¶ 23 (citing *Burger King*, 471 U.S. at 476, and *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 281 (7th Cir. 1990)). Thus, the fact that defendant may have operated the trust from Nevada is not dispositive as to his contacts with Illinois. Indeed, while defendant's actions may have been initiated in Nevada, almost all of them were directed to Illinois—Krone herself lived in Illinois for several years prior to her death, defendant as trustee entered into a contract to place Krone in an assisted living facility in Illinois, trust assets were sent to Illinois for Krone's care before her death and for her funeral, distributions were made to Illinois beneficiaries, and defendant engaged in communications about the trust with Illinois beneficiaries.

¶ 27     Furthermore, the trial court's statement that "no trust assets exist in Illinois" was accurate at the time of the litigation, but such was not always the case. Defendant admitted in his deposition and in the financial spreadsheets he provided that, when he became trustee, trust assets were held in Illinois banks. It was only later that those assets were transferred elsewhere. The Illinois long-arm statute specifically provides that the acquisition of ownership, possession, or control of any asset or thing of value present within Illinois at the time of acquisition subjects a defendant to jurisdiction. 735 ILCS 5/2-209(a)(10) (West 2016); see also *In re Marriage of DiFiglio*, 2016 IL App (3d) 160037, ¶ 15.

¶ 28     Additionally, defendant's position as trustee places him in a fiduciary relationship with plaintiffs as beneficiaries. "It is well established that a fiduciary relationship exists between a trustee and a beneficiary." *Burgauer v. Burgauer*, 2019 IL App (3d) 170545, ¶ 35 (citing *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1006 (2010)). At the time that defendant was named as successor trustee, and at the time he began exercising the powers of trustee, the trust agreement clearly provided that "[t]he powers and duties of the Trustee hereunder and all questions of interpretation of this instrument shall be governed by the laws of the State of Illinois," language that has never expressly been removed from the trust agreement. Under the Illinois long-arm statute, the exercise of powers granted under the authority of this state as a fiduciary subject a defendant to jurisdiction. 735 ILCS 5/2-209(a)(14) (West 2016). Thus, we find that defendant had sufficient contacts with Illinois in his capacity as trustee of Krone's trust such that he was fairly warned that he could be haled into Illinois courts with respect to the administration of the trust.

¶ 29     Additionally, we find that the litigation arose out of or is related to defendant's contacts with Illinois. The applicable standard for determining whether an action arises out of or is related to the defendant's contacts "is lenient or flexible." *Russell*, 2013 IL 113909, ¶ 83. The instant litigation seeks an accounting of defendant's actions with respect to the trust. This accounting necessarily involves defendant's contacts with Illinois because, as noted, defendant has consistently made payments to Illinois entities and individuals using trust assets and has moved the trust assets themselves from Illinois banks to other locations. Such transactions will certainly be included in any accounting.

¶ 30    Finally, we find that it is reasonable to require defendant to litigate these issues in Illinois.

"Reasonableness itself requires consideration of the following factors: (1) the burden of defending the action in Illinois, (2) the interest of Illinois in adjudicating the dispute, (3) the plaintiff's interest in obtaining effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the action, and (5) the shared interests of the states in advancing fundamental social policies." *Burgauer*, 2019 IL App (3d) 170545, ¶ 55 (citing *Bombliss v. Cornelsen*, 355 Ill. App. 3d 1107, 1115 (2005)).

If the plaintiff has established that the defendant purposely directed his activities at the forum state, it is the defendant's burden to show that litigating the dispute in that state would be unreasonable. *Bombliss*, 355 Ill. App. 3d at 1115 (citing *Burger King*, 471 U.S. at 477).

¶ 31    In the case at bar, defendant did not argue to the court below, and does not argue on appeal, that the reasonableness factors weigh against litigating in Illinois. The only apparent factor that would weigh in his favor is his physical presence in Nevada. Defendant has Illinois counsel, who has been representing him in the instant litigation. Illinois has a clear interest in adjudicating disputes concerning Illinois beneficiaries. Plaintiffs have an interest in obtaining effective relief in Illinois, and the most efficient resolution of the action would be in Illinois, where all of the beneficiaries live and where trust payments have been directed. Defendant has put forth no reasons why Illinois would be an unreasonable forum, and accordingly, we find that Illinois courts have personal jurisdiction over defendant in the instant matter.

¶ 32    We are also unpersuaded by defendant's claim that a "forum selection clause" provides that any litigation must be brought in Nevada courts. As an initial matter, the trust agreement provided that "[t]he powers and duties of the Trustee hereunder and all questions of interpretation of this instrument shall be governed by the laws of the State of Illinois." This language has never expressly been removed from the trust agreement by any of the amendments. Instead, defendant relies on a provision in the sixth amendment to the trust agreement, which provided that "[t]he situs of jurisdiction is hereby changed to the State of Nevada, and not Illinois, in every legal respect referred to throughout this Agreement and Amendments." Defendant is correct that a forum selection clause in a contract is *prima facie* valid and should be enforced unless the opposing party shows that enforcement would be unreasonable. See *Calanca v. D&S Manufacturing Co.*, 157 Ill. App. 3d 85, 87 (1987); *Brandt v. MillerCoors, LLC*, 2013 IL App (1st) 120431, ¶ 13. However, this clause is not a forum selection clause but instead purports to change the "situs of jurisdiction" to Nevada.

¶ 33    The meaning of the term "situs of jurisdiction" is not clear—the phrase is not a legal term of art and does not have a defined meaning.[5] Nevertheless, we may infer two natural interpretations of this phrase. The first is that the amendment changes the situs of the *trust* to Nevada. This, however, would not change our jurisdictional analysis, as the location of the administration of a trust is not a dispositive determination as to jurisdiction but is only one factor we consider in looking at the entirety of defendant's activities.[6] The other obvious interpretation, and the one made by plaintiffs, is that the provision represents the parties' consent to jurisdiction in Nevada. However, again, this would not affect our jurisdictional

_____

[5]A Westlaw search reveals no cases using this phrase, nor is it included in Black's Law Dictionary.

[6]Indeed, we did consider the fact that defendant administered the trust from Nevada in our analysis above.

analysis, as the provision contains no suggestion that Nevada is to be the *exclusive* jurisdiction for litigation concerning the trust. See *Calanca*, 157 Ill. App. 3d at 87 (distinguishing cases involving consent to jurisdiction clauses from the exclusive forum selection clause before it by noting that "when both parties to the contracts consented to jurisdiction in a particular forum, that forum was established as permissible for litigation, but not exclusive," as was the case with the clause before it). Consequently, under either interpretation, nothing in this provision prevents an Illinois court from asserting personal jurisdiction where it would be appropriate, as we have found that is the case here. Accordingly, we must reverse the trial court's dismissal of plaintiffs' complaint and remand for further proceedings.

¶ 34                                                    CONCLUSION

¶ 35        For the reasons set forth above, defendant's contacts with Illinois were sufficient to subject him to personal jurisdiction with respect to plaintiffs' complaint seeking an accounting of the trust's assets.

¶ 36        Reversed and remanded.