**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200497-U

Order filed November 3, 2021
Modified upon denial of rehearing November 30, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| KALEIGH MICHELLE ANDERSON and JANELLE MARIE ANDERSON | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiffs-Appellants | ) ) | |
| (Molly Murphy, individually and as assignee), | ) ) | Appeal No. 3-20-0497 Circuit No. 16-CH-461 |
| v. | ) ) | |
| CAROLINE L. ANDERSON and MICHAEL E. ANDERSON, | ) ) ) | Honorable Derek Asbury and Katherine Gorman |
| Defendants-Appellees. | ) | Judges, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Daugherity and O'Brien concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*: The circuit court (1) did not err as a matter of law when it found that it lacked personal jurisdiction over the out-of-state defendant and dismissed the plaintiffs' complaint with prejudice and (2) did not abuse its discretion when it denied the plaintiffs' motion for Rule 137 sanctions.

¶ 2        The plaintiffs, Kaleigh Michelle Anderson and Janelle Marie Anderson (hereinafter "the

twins"), filed a second amended complaint against the defendants, Caroline L. Anderson (their

paternal grandmother) and Michael E. Anderson (their father), alleging that Caroline wrongfully used funds from custodial accounts she created on their behalf to pay for their college expenses, which was Michael's legal obligation to pay per court order. Caroline and Michael filed a motion to dismiss, arguing that the court lacked personal jurisdiction over Caroline as a resident of Pennsylvania. The court granted the motion to dismiss. During the litigation of these proceedings, both sides requested sanctions. The court denied all sanctions. The twins appeal.

¶ 3                                    I. BACKGROUND

¶ 4        This appeal stems from a dissolution action between Michael and Molly Murphy. During their marriage, they had twin daughters, the plaintiffs. Two appeals followed the dissolution judgment. *In re Marriage of Anderson & Murphy*, 405 Ill. App. 3d 1129 (2010); *In re Marriage of Anderson & Murphy*, 2016 IL App (3d) 150020-U. Of particular importance is the twins' college expenses. The circuit court's order provided that Michael pay the "hard costs" of the twins' education and payments by a third party on any of Michael's financial obligations would be credited to him. The court ordered that "Michael, or any third party, shall issue a draft made payable to the respective university so that the account remains credited and paid on time." This court held that the circuit court did not abuse its discretion when it determined that Michael would be responsible for the expenses associated with the twins' college expenses. 2016 IL App (3d) 150020-U, ¶ 58. Nonetheless, Molly argued that it was error for the circuit court to allow Michael to pay for the twins' college expenses via the twins' custodial accounts that were created by Caroline. *Id.* ¶ 62. This court declined to address the argument, stating:

> "At no time did Michael have access to his daughters' custodial accounts; only his
> mother did. Use of the twins' custodial money is a matter between the twins and
> their paternal grandmother. It was not a proper matter for either the trial court or

2

this court to address in conjunction with the dissolution action." *Id.*

¶ 5    In December 2016, Molly, as assignee of the twins, brought the instant action founded in breach of fiduciary duty, conversion, conspiracy, and unjust enrichment. Caroline and Michael filed a combined motion to dismiss (735 ILCS 5/2-619.1 (West 2016)) arguing, among other things, *res judicata* and lack of personal jurisdiction over Caroline, which was supported by Caroline's affidavit. As to *res judicata*, Caroline and Michael stated that the issue raised by Molly was already decided in the dissolution case when a court order provided that Michael or a third party pay the twins' college expenses. Judge James Mack dismissed the complaint without prejudice. The court found that the complaint's form prohibited an " intelligent assessment as to exactly what's being asked and for who."

¶ 6    In September 2017, Molly filed an amended complaint and petition for accounting. As to the court's personal jurisdiction over Caroline, she argued that the Illinois Uniform Transfers to Minors Act (IUTMA) provided personal jurisdiction over Caroline (citing 760 ILCS 20/3 (West 2016)) and that the Illinois long-arm statute applied (735 ILCS 5/2-209 (West 2016)).

¶ 7    Caroline and Michael filed a combined motion to dismiss the amended complaint, continuing their objection that the court lacked personal jurisdiction over Caroline, which was again supported by Caroline's affidavit. The affidavit provided that Caroline had been a resident of Pennsylvania at all relevant times, was never a resident of Illinois, and rarely visited Illinois. She created the accounts around 1995, shortly after the twins were born, and all efforts to create the accounts were undertaken by her in Pennsylvania. Caroline stated that she was the sole custodian of the accounts, which was created with funds and assets from herself and her husband, Richard Anderson, as residents of Pennsylvania. Further, other than the reinvestment of dividends, no other person contributed to the accounts except her and Richard. Caroline also stated at no time

3

did she discuss the accounts with the twins. The accounts were held with Mid-Atlantic Capital Corporation (Mid-Atlantic) and its corporate offices were in Pennsylvania. As sole custodian of the accounts, Caroline was the only individual with authority to direct any account activity. All directives to Mid-Atlantic were made by her, in writing or by e-mail, from Pennsylvania.

¶ 8    Caroline and Michael also filed a motion for sanctions under Illinois Supreme Court Rule 137 (eff. July 1, 2013) against Molly and her attorney Jeffrey Ryva. Caroline and Michael argued that they were attempting to relitigate the post-dissolution proceedings, misleading the court by relying on a model act, and bringing meritless claims against Michael.

¶ 9    In October 2017, the court granted leave to substitute the twins as the plaintiffs. Attorney Charles Scanlon entered his appearance as co-counsel (the twins' filings thereafter named both Scanlon and Ryva as their attorneys). The twins filed a cross motion for Rule 137 sanctions against Michael, Caroline, and their attorneys, arguing that they deliberately misrepresented court rulings from the dissolution case. Judge Mack dismissed the complaint without prejudice and reserved any ruling on sanctions. He noted that the basis for the complaint was probably vindictive but, regardless, the court lacked personal jurisdiction over Caroline, specifically:

> "The [IUTMA] doesn't get you jurisdiction over Caroline. You have to look to the long-arm statute. You're proceeding under the tort theory. You're looking at the conversion, apparently; and you're claiming that the last act that's necessary for that was the payment of the tuition in Illinois or to the sorority house in Illinois. That's not the last act. The last act is when she took it out, when she paid it out. Doesn't matter where she paid it to if it was wrong. So I don't think you have jurisdiction over her under the long-arm statute, and you don't have it under the [IUTMA].

4

So as it's pled, I'm going to find that you don't have jurisdiction over Caroline, and I'm going to dismiss the case. I'm going to do it without prejudice. You can come back and try again.

It seems to me that what you should have done was file an action for accounting in Pennsylvania where jurisdiction over Caroline wouldn't have been an issue. You could have found the answers out that you wanted and then have the girls pursue it possibly a bit further if Michael was involved with the conspiracy of unjust enrichment; but without Caroline, I don't think you get to the other claims against Michael either. And so, I am going to dismiss the entire case. No jurisdiction over Caroline."

¶ 10 In January 2018, the case was reassigned to Judge Katherine Gorman. Attorney Scanlon moved to withdraw, which the court granted. Attorney Dawn Brewer filed an appearance on behalf of the twins. Just over a month later, attorney Brewer filed a motion to withdraw as counsel for Molly as assignee, even though her appearance only stated she was representing the twins. Also, notice of the motion was only sent to Molly and not the twins. Caroline and Michael objected to the motion because the twins were substituted as the plaintiffs and there was no motion or order entered permitting Molly to reenter the case. Also, Caroline and Michael argued that attorney Brewer's filings strongly suggested that Molly was using the twins as straw persons and that the twins had not actually participated in the case in a meaningful way.

¶ 11 In August 2018, Caroline and Michael filed a motion to request an evidentiary hearing seeking an order compelling the twins to testify as to whether they desired to pursue the litigation. This request was made based on the twins retaining attorney Brewer, who filed a motion to withdraw stating she was representing Molly; attorney Brewer's notice of motion to withdraw that

was sent only to Molly and not the twins; and avoiding further deterioration of the twins' relationship with their father and grandmother. The court granted attorney Brewer's motion and ordered the twins to appear in person at the next status hearing. Attorney Angela Evans entered her appearance on behalf of the twins only. The status hearing was held, without the twins' presence, and the court provided a filing deadline for a second amended complaint.

¶ 12    In September 2018, the twins filed a second amended complaint and petition for accounting. They put forth three counts against only Caroline, alleging violations of the IUTMA (statutory fiduciary duty), common law breach of fiduciary duty, and conversion. The complaint provided the following facts. Caroline purchased Disney and Guidant stocks for the twins and sent the certificates to their parents at their home in Morton, Illinois. The stock certificates were in Molly's physical possession in Illinois for 22 years. Caroline sent tax information to the twins at their residence in Illinois. The accounts at issue were brokerage accounts with investments made with mutual funds and companies located outside of Pennsylvania. Caroline mailed dividend checks to the twins at their Illinois residence for stocks in their accounts. The accounts Caroline formed for the twins were national brokerage accounts not limited to Pennsylvania. Caroline sent documents and written notes to the twins at their residence concerning their investments. Caroline caused 1099 forms to be sent to Illinois. Also, Caroline sent stock transfer forms to the twins at their residence in Illinois for these investments. The twins filed taxes in Illinois for their earnings in the accounts at issue. The mailings ceased once Molly filed for divorce.

¶ 13    The twins alleged that Caroline committed the following tortious acts within Illinois: (1) transferred funds belonging to Janelle to the University of Illinois; (2) converted funds belonging to the twins who are Illinois residents; (3) wired money from the twins' accounts to bank accounts located in Illinois in 2014 and 2015; and (4) wired funds from Janelle's account to Heartland Bank

6

in Illinois in December 2015. The twins argued that the court had personal jurisdiction over Caroline via the Illinois long-arm statute and the IUTMA.

¶ 14    Caroline and Michael filed a supplemental motion for sanctions, in essence adding that the twins were continuing on theories of personal jurisdiction that the court had already rejected. They also moved to dismiss the complaint on the same grounds raised in the previous motions to dismiss. The twins filed a response to the motion to dismiss and attached a variety of exhibits, including their individual affidavits, to support the added facts.

¶ 15    In December 2018, Judge Gorman dismissed the second amended complaint with prejudice, finding:

> "In [this case], the Second Amended Complaint reverts back in time alleging various facts that are sprinkled throughout the history of this case in affidavits in this proceeding and that have previously been considered in 01 D 428, 08 MR 77, and [this case]. These facts and arguments have been considered time and time again. Illinois does not have jurisdiction over Caroline Anderson. Judge Borden considered this in 08 MR 77 and Judge Mack considered these facts on December 7, 2017. Judge Brandt considered the underlying divorce in 01 D 428. Judge Brandt opined that Mr. Anderson gets credit for the monies paid his mother Caroline towards the girls' education.
>
> This litigation has been ongoing since the girls, Kaleigh and Janelle, were seven years of age. During the time of this litigation, Kaleigh and Janelle completed their grade school, high school, and college educations and by all appearances appear to be fine young adults in spite of the ongoing acrimony between their parents. These issues have been fully contemplated over the past seventeen years.

7

Accordingly, the Second Amended Complaint alleges no new facts or theories that have not been examined and ruled upon." (Emphasis in original.)

¶ 16        Attorney Michael Fleming filed an appearance on behalf of Molly for the pending motions for sanctions. Shortly after, attorney Fleming filed a motion to withdraw representation from Molly, and attorney Evans filed a motion to withdraw from her representation of the twins. Molly and the twins filed separate *pro se* responses to the motions to withdraw, where the responses all appeared to take identical form. The court granted both motions to withdraw. At a status hearing, the record provided that Molly appeared *pro se*, the twins were not present, Caroline and Michael maintained the same representation, and attorney Ryva appeared for his firm and himself.

¶ 17        In September 2019, Caroline and Michael filed an amended supplemented motion for sanctions against Molly, attorney Ryva, the twins, and attorney Evans. They provided that, after the twins were substituted as the plaintiffs, they continued to pursue their claims with the second amended complaint, which added no meaningful facts and only caused unreasonable delay and expense. They also argued that Molly's three attempts at establishing the court's personal jurisdiction over Caroline without success constituted harassment and demonstrated ill-will. They added that the twins' and Molly's behavior caused unreasonable delay by the hiring and firing of multiple attorneys who sought to withdraw due to their inability to communicate with their clients or get paid. Additionally, Caroline and Michael alleged that Molly, on multiple occasions, engaged in the unauthorized practice of law by acting as legal counsel for the twins. They argued that this was nothing more than another attempt by Molly to obtain relief against Michael that she failed to achieve in the divorce case. Further, Molly's negotiations and arguments on behalf of the twins violated Illinois law in that she engaged in the practice of law without a license. Attached was an attorney's fees affidavit providing that Caroline and Michael incurred $41,031.50 in this action.

8

¶ 18    In December 2019, attorney Robert Hanauer filed his appearance on behalf of Molly and filed a motion to join and adopt the twins' response and cross motion for sanctions that was filed in October 2017. Soon after, attorney Hanauer filed a motion to withdraw, which the court granted. The parties engaged in discovery on the issue of sanctions and continued settlement efforts. Thereafter, the case was reassigned to Judge Derek Asbury.

¶ 19    In June 2020, attorney Jerry Tuffentstamer filed an appearance on Molly's behalf.

¶ 20    In October 2020, the twins filed *pro se* motions for sanctions against Michael, Caroline, and their attorneys. The twins argued that Caroline and Michael falsely stated that (1) the twins did not give Molly authority to file and pursue the lawsuit and (2) money was taken from college accounts rather than custodial accounts. Attorney Tuffentsamer entered an appearance for the twins and adopted their *pro se* motions for sanctions.

¶ 21    The matter proceeded to hearing where the court noted that the parties agreed to consolidate the motions and hear evidence and arguments together. The court denied all requests for sanctions. The court found that the filings in this case were well written, organized, logical, supported by law, and argued interpretations of the law on each side. The twins appeal.

¶ 22                                    II. ANALYSIS

¶ 23                 A. Motion to Supplement Record and Take Judicial Notice

¶ 24    In February 2020, the parties were in the briefing stage of this appeal. The twins, represented by attorney Ryva, filed a motion to take judicial notice and supplement the record. This court denied the motion on grounds of vagueness. In September 2021, nearly a week before oral argument was scheduled for this case, the twins filed a clarified and renewed motion to take judicial notice and supplement the record. They asked that this court consider "the entire court files of common law records and transcripts" from the previous two circuit court cases that arose

9

from the dissolution action (Peoria County case No. 08-MR-77 and Tazewell County case No. 01-D-428). The twins stated that, when Judge Gorman granted the motion to dismiss, she noted that the same issues were being raised in these lawsuits, so this court should have the same benefit of the record for those cases. *Supra* ¶ 15. This court ordered the motion to be taken with the case.

¶ 25 At the outset, it is troubling that this motion was filed a week before oral argument when (1) this particular issue was known to the twins as early as December 2018 when Judge Gorman issued her ruling on the motion to dismiss, (2) briefing for the case at bar was completed months ago, and (3) the previous version of this motion was denied by this court on vagueness grounds seven months ago. We recognize that Judge Gorman mentioned these other cases in her ruling, but even the twins acknowledge that she "never really said what parts of the two records she reviewed." Regardless, we find that the records from the other cases are entirely irrelevant to this appeal and unnecessary in reaching our decision. For these reasons, the twins' motion is denied.

¶ 26 We next address the merits. The twins raise numerous arguments on appeal relating to the court's dismissal of their complaint for lack of personal jurisdiction and denial of sanctions.

¶ 27 B. Personal Jurisdiction

¶ 28 The circuit court dismissed the second amended complaint finding that it lacked personal jurisdiction over Caroline (735 ILCS 5/2-619)(a)(1) (West 2018)). The plaintiff bears the burden to establish a *prima facie* basis for exercising personal jurisdiction over a nonresident defendant. *Rios v. Bayer Corp.*, 2020 IL 125020, ¶ 16. When the court decides this issue based solely on documentary evidence, as here, our standard of review is *de novo*. *Id.* On review, this court must resolve in favor of the plaintiff any conflicts in the pleadings and affidavits. *MacNeil v. Trambert*, 401 Ill. App. 3d 1077, 1080 (2010). However, "a plaintiff's *prima facie* case for jurisdiction can be overcome by a defendant's uncontroverted evidence that defeats jurisdiction." *Id.*

10

¶ 29        Section 2-209 of the Illinois Code of Civil Procedure (735 ILCS 5/2-209 (West 2016)), known as the Illinois long-arm statute, consists of three subsections that identify multiple grounds for Illinois courts to invoke personal jurisdiction over defendants. See 735 ILCS 5/2-209(a), (b), (c) (West 2016). In this case, the twins claim that subsections (a) (specific personal jurisdiction) and (c) (the "catch-all provision") provide personal jurisdiction over Caroline.

¶ 30        Historically, courts applied a two-part analysis in deciding these jurisdictional issues: by determining whether (1) a specific statutory provision of section 2-209 has been satisfied and (2) due process requirements have been met. *Russell v. SNFA*, 2013 IL 113909, ¶ 29. However, this two-part analysis is not necessary when subsection (c) is invoked because it constitutes an independent basis for exercising personal jurisdiction over the defendant and "effectively collapses the jurisdictional inquiry into the single issue of whether a defendant's Illinois contacts are sufficient to satisfy federal and Illinois due process." *Id.* ¶ 30.

¶ 31        Here, since the twins raise both subsections (a) and (c) we would typically focus our analysis on due process alone. See *id.* However, the twins' argument under subsection 2-209(c) relies entirely on their arguments raised subsection 2-209(a). *Infra* ¶¶ 56-57. Further, the bases of jurisdiction argued under subsection 2-209(a) provide the groundwork for our due process analysis. *Capra v. Lipschultz*, 2020 IL App (1st) 192160, ¶ 22. Therefore, we begin our analysis with subsection 2-209(a) to determine whether the court had personal jurisdiction over Caroline.

¶ 32        Subsection (a) addresses specific personal jurisdiction and requires the defendant's activities to be purposefully directed at Illinois, giving rise or relating to the plaintiff's cause of action. *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 14. Subsection (a) enumerates 14 activities or transactions that cause a nonresident to be subject to the jurisdiction of Illinois courts. Here, the twins argue that subsections (a)(2), (a)(7), (a)(10), and

11

(a)(11) of the long-arm statute provide specific personal jurisdiction over Caroline in Illinois. Respectively, these subsections involve the commission of a tortious act within Illinois, making or performing a contract substantially connected to Illinois, acquiring assets in Illinois, and breaching a fiduciary duty in Illinois. 735 ILCS 5/2-209 (a)(2), (7), (10), (11) (West 2016).

¶ 33                                    1. *Tortious Act Within Illinois (a)(2)*

¶ 34        Subsection (a)(2) allows for specific personal jurisdiction where the cause of action arises out of the commission of a tortious act within the state. 735 ILCS 5/2-209(a)(2) (West 2016). A plaintiff pursuing this avenue must allege that the defendant performed an act which caused an injury in Illinois and was tortious in nature. *Arthur Young & Co. v. Bremer* 197 Ill. App. 3d 30, 36 (1990). This provision may be satisfied if the plaintiff establishes an economic injury in Illinois and activity by the defendant "indicating an intent to affect Illinois interests." *Id.* The place of the wrong is the place where the last event necessary to establish the defendant's liability occurred. *Id.* This is referred to as the "last act." The state where the victim suffered an injury is considered the state in which the tort occurred. *Russell v. SNFA*, 408 Ill. App. 3d 827, 833 (2011). However, where none of the tortious acts occurred in Illinois, an economic loss to the plaintiff is insufficient to establish jurisdiction. *Poplar Grove State Bank v. Powers*, 218 Ill. App. 3d 509, 519 (1991).

¶ 35        The twins take issue with the circuit court's conclusion that the "last act" occurred when Caroline accessed the custodial accounts in Pennsylvania. Instead, they provide that the last act did not occur until Caroline actually used the funds for an improper purpose and conducted the transactions in Illinois. Additionally, they note that Caroline's activity caused them to be responsible for capital gains tax in Illinois.

¶ 36        We find the case of *Yates v. Muir*, 112 Ill. 2d 205 (1986), instructive. The plaintiff was an Illinois resident who retained services of an attorney who practiced in Kentucky. *Id.* at 206. The

12

attorney filed a tardy notice of appeal with a federal agency in an administrative hearing located in Illinois. *Id.* at 207. The plaintiff brought a legal malpractice claim against the attorney in Illinois under the long-arm statute's tortious activity clause. *Id.* The attorney filed a motion to quash service of process for want of jurisdiction. *Id.* The circuit court denied the motion and the appellate court affirmed. *Id.* at 207-08. The supreme court reversed the lower courts' decisions, finding:

> "Here, the plaintiff retained services of an attorney who practiced in Kentucky. The matter on which the attorney represented the plaintiff was a Federal administrative claim which did not require the attorney to appear in any State court or Federal court in Illinois, or to have a license to practice here, or, for that matter, to be present in Illinois. The legal services performed by the defendant were performed exclusively in Kentucky; if there was any malpractice in rendering those services it took place in Kentucky. The neglect, if any, of the attorney was his failure in Kentucky to arrange for the filing of the appeal. When the instruments for the appeal were tardily prepared they were drawn in Kentucky. Though this may seem as much a metaphysical point as a legal one, this tardy preparation, as well as the neglect that was the basis of the malpractice action, took place in Kentucky." *Id.* at 209-210.

¶ 37　　　　Likewise, the twins alleged that Caroline committed a tort in Illinois when she transferred, converted, and wired funds from the custodial accounts to Illinois. However, the uncontroverted evidence shows that Caroline, as a resident of Pennsylvania and the custodian of accounts set up under the Pennsylvania's version of the UTMA, exercised dominion and control over the accounts exclusively from Pennsylvania. When she used funds from the accounts to pay for the twins' college expenses, she did so from Pennsylvania—the money just happened to be sent to Illinois

13

institutions. This is similar to the attorney defendant in *Yates* where his untimely appeal in Illinois was insufficient to establish personal jurisdiction over him where the evidence showed that he worked exclusively from Kentucky but had sent documents to Illinois.

¶ 38        Because we find that the "last act" for the tort allegations occurred in Pennsylvania, this subsection fails to provide specific personal jurisdiction over Caroline. See *Graff v. Leslie Hindman Auctioneers, Inc.*, 342 F. Supp. 3d 819, 826 n.3 (N.D. Ill. 2018) (the "last act" needed to support the conversion claim—taking control over the property—occurred in Arizona, not Illinois, when a pawnbroker allegedly converted the plaintiff's paintings by sending them from Arizona to Illinois to be sold at auction). Thus, the court did not have personal jurisdiction over Carline pursuant to subsection (a)(2) of the Illinois long-arm statute. 735 ILCS 5/2-209(a)(2) (West 2016).

¶ 39        We also emphasize that, when no tortious acts occurred in Illinois, an economic loss to the plaintiffs remains insufficient to establish personal jurisdiction. *Powers*, 218 Ill. App. 3d at 519. Therefore, the use of the twins' funds from their Pennsylvania custodial accounts and the resulting Illinois tax consequences are not enough for the court to invoke personal jurisdiction over Caroline. Our supreme court has clearly held that Illinois courts do not acquire jurisdiction under the "last act" theory simply because there were economic consequences in Illinois of the defendant's tortious conduct. *Green v. Advance Ross Electronics Corp.*, 86 Ill. 2d 431, 439 (1981).

¶ 40        The twins also argue that Caroline and Michael entered into a joint venture or conspiracy to raid their custodial accounts to pay his legal obligations and case law provides personal jurisdiction over a nonresident who commits such tortious conduct with an Illinois resident in Illinois. However, their second amended complaint contains no allegation that Michael was involved in any of the activity that occurred in Illinois pertaining to the custodial accounts. In fact, all of the allegations in the second amended complaint were directed toward Caroline. The counts

14

of unjust enrichment and conspiracy were only brought against Michael in previous versions of the complaint. Therefore, the twins' second amended complaint does not support this argument and cannot provide a basis for personal jurisdiction over Caroline.

¶ 41                    2. *Contract or Promise Substantially Connected to Illinois (a)(7)*

¶ 42            Subsection (a)(7) allows for specific personal jurisdiction where the making or performance of a contract or promise was substantially connected with the state. 735 ILCS 5/2-209(a)(7) (West 2016). A nonresident defendant's contract or promise with an Illinois resident does not automatically establish jurisdiction. *Estate of Isringhausen v. Prime Contractors & Associates, Inc.*, 378 Ill. App. 3d 1059, 1065 (2008). Instead, the court must determine whether a contract or promise is substantially connected with Illinois. The court considers the following factors: (1) who initiated the transaction, (2) where the contract or promise was negotiated, (3) where the contract or promise was formed, and (4) where performance was to take place. *Cardenas Marketing Network, Inc. v. Pabon*, 2012 IL App (1st) 111645, ¶ 36.

¶ 43            In their second amended complaint, the twins argued that by creating the accounts and naming herself as custodian, Caroline made a promise substantially connected to Illinois to act as a fiduciary of Illinois residents. On appeal, they cite *Kalata v. Healy*, 312 Ill. App. 3d 761 (2000), for their argument that Caroline made a promise substantially connected to Illinois.

¶ 44            In *Kalata*, the plaintiff filed a breach of contact claim against the defendant seeking to recover money the plaintiff placed in an alleged joint bank account for the purpose of funding a joint venture with the defendant. *Id.* at 762. The defendant allegedly misappropriated the funds and refused to return the money to the plaintiff. *Id.* at 762-63. The defendant was a resident of California, had been friends with the plaintiff for several years, called the plaintiff in an attempt to persuade her to form a joint venture to invest money in various projects, and mailed the plaintiff

15

bank documents that he indicated were necessary to open a joint bank account at a California bank. *Id.* The plaintiff signed the documents, mailed the defendant a cashier's check, and wired money into the joint bank account. *Id.* Thereafter, the plaintiff discovered that the defendant had withdrawn all of the funds from the joint bank account and brought the action in Illinois state court. *Id.* at 763. The defendant filed a motion to quash service of process and dismiss the complaint for lack of jurisdiction, which the court granted. *Id.* at 763-64. The appellate court reversed and found that the defendant entered into a contract substantially connected with Illinois to satisfy subsection (a)(7), noting that the defendant conceded that he entered into a contract with the plaintiff and that he also initiated telephone calls with the plaintiff to negotiate the joint venture agreement and mailed the plaintiff bank documents from California which the plaintiff relied on when sending him money. *Id.* at 766.

¶ 45        The twins argue that *Kalata* applies because Caroline purposefully directed her activities at Illinois residents by creating the long-continuing custodial accounts for her granddaughters who have always been residents of Illinois. We disagree. In contrast to *Kalata*, Caroline unilaterally created custodial accounts in Pennsylvania into which she made gifts to the twins by depositing funds or stocks into the accounts while she was in Pennsylvania. Also, unlike *Kalata*, any correspondence sent from Caroline to the twins was not for the purpose of negotiating a contract or making a promise, and no money from the twins was deposited into the custodial accounts. Further, any promise or contract under these facts would be between Caroline and the state of Pennsylvania per its version of the UTMA. Therefore, any alleged promise made by Caroline was not substantially connected to Illinois, and the court did not have personal jurisdiction over Caroline pursuant to subsection (a)(7) of the Illinois long-arm statute. 735 ILCS 5/2-209(a)(7) (West 2016).

16

¶ 47      Subsection (a)(10) allows for specific personal jurisdiction through the acquisition of ownership, possession, or control of any asset or thing of value present within the State when ownership, possession, or control was acquired. 735 ILCS 5/2-209(a)(10) (West 2016). "[T]he plain meaning of section 2-209(a)(10) is that, for purposes of *in personam* jurisdiction, the asset or thing of value involved must have been present in the State when the defendant acquired his 'ownership, possession or control' of it." *Powers*, 218 Ill. App. 3d at 520.

¶ 48      The twins argue that *In re Marriage of DiFiglio*, 2016 IL App (3d) 160037, applies. In *DiFiglio*, the out-of-state defendant obtained possession and control of the proceeds from the sale of an Illinois corporation while in Illinois. *Id.* ¶ 19. A different panel of this court held that, because the defendant took possession and control over those funds in Illinois, it satisfied section 2-209(a)(10) of the Illinois long-arm statute. *Id.* Specifically noting that "[w]here the defendant makes trips to Illinois, obtains property, including money, from Illinois residents, and remains in continual communication with Illinois residents, the minimum contacts requirement is satisfied." *Id.* ¶ 18. This falls in line with Illinois's manifest interest in providing its residents with a convenient forum for redressing injuries allegedly inflicted by out-of-state actors. *Id.* We disagree that *DiFiglio* applies to the case at bar. Among other reasons, there is no evidence that Caroline obtained any property in Illinois, she provided that she rarely made trips to Illinois, and there was no evidence that any of those trips were made in connection with the custodial accounts.

¶ 49      The twins also argue that *Capra*, 2020 IL App (1st) 192160, supports their theory of personal jurisdiction because Caroline acquired control of their property interests in the custodial accounts and those interests are in Illinois where they retained residency. The twins explain they are the owners of the custodial accounts per the Pennsylvania Uniform Transfers to Minors Act

because once the accounts were made in their names, they were irrevocable and indefeasibly vested in them. 20 Pa. C.S.A. § 5311(b) (West 2016). Also, they state that the certificates of stock for their custodial accounts were at all times held in Illinois, which is a tangible representation of their possession of the custodial accounts.

¶ 50        In *Capra*, the out-of-state defendant was a trustee and the plaintiffs were beneficiaries and Illinois residents. *Id.* ¶ 3. The plaintiffs requested an accounting after the defendant informed them that the trust assets were nearly depleted, but the defendant refused to provide the information. *Id.* The circuit court held that the plaintiffs failed to show that the defendant had purposefully availed himself of the privilege of conducting activities in Illinois and the cause of action did not arise out of the defendant's contacts with Illinois. *Id.* ¶ 25. The appellate court disagreed, holding:

> " '[A] defendant's lack of physical presence in a forum does not defeat jurisdiction there.' *Aasonn*[*, LLC v. Delaney*], 2011 IL App (2d) 101125, ¶ 23 (citing *Burger King* [*Corp. v. Rudzewicz*], 471 U.S. [462,] 476 [(1985)], and *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 281 (7th Cir. 1990)). Thus, the fact that defendant may have operated the trust from Nevada is not dispositive as to his contacts with Illinois. Indeed, while defendant's actions may have been initiated in Nevada, almost all of them were directed to Illinois—[the decedent who created the trust] lived in Illinois for several years prior to her death, defendant as trustee entered into a contract to place [her] in an assisted living facility in Illinois, trust assets were sent to Illinois for [her] care before her death and for her funeral, distributions were made to Illinois beneficiaries, and defendant engaged in communications about the trust with Illinois beneficiaries.

18

Furthermore, the trial court's statement that 'no trust assets exist in Illinois' was accurate at the time of the litigation, but such was not always the case. Defendant admitted in his deposition and in the financial spreadsheets he provided that, *when he became trustee, trust assets were held in Illinois banks*. It was only later that those assets were transferred elsewhere. The Illinois long-arm statute specifically provides that the acquisition of ownership, possession, or control of any asset or thing of value present within Illinois at the time of acquisition subjects a defendant to jurisdiction." (Emphasis added.) *Id.* ¶¶ 26-27.

¶ 51 We also find that *Capra* does not support the twins' argument under section 2-209(a)(10). Again, Caroline created the custodial accounts in Pennsylvania and they were always managed and controlled from Pennsylvania. Therefore, Caroline did not acquire ownership, possession, or control of any asset or thing of value present within Illinois at the time of acquisition. Regarding the twins' arguments that the stock certificates were held in Illinois and that they are Illinois residents who legally owned the custodial accounts, they seem to be missing the point. This provision of the Illinois long-arm statute is unconcerned with when *they* may have acquired ownership or possession of the custodial accounts. Instead, our inquiry focuses on Caroline, the out-of-state defendant they attempt to hale into court. See 735 ILCS 5/2-209(a)(10) (West 2016).

¶ 52 4. *Breaching a Fiduciary Duty in Illinois (a)(11)*

¶ 53 Section 2-219(a)(11) of the Illinois long-arm statute provides personal jurisdiction over an out-of-state defendant if she breaches any fiduciary duty within the State. 735 ILCS 5/2-209(a)(11) (West 2016). Aside from setting forth the elements for breach of fiduciary duty, the entirety of the twins' argument on this section is as follows:

"A fiduciary duty breach claim does not arise until the plaintiff is damaged.

19

This means that from the standpoint of the last act necessary to see if the breach was in Illinois, Plaintiffs' claim for damages did not crystalize until they had complete loss of their funds when Caroline not only initially accessed their accounts but paid Michael's obligations to their education institutions and caused a large federal and Illinois tax liability."

¶ 54    The twins failed to cite any authority in support of this proposition and did not further develop this argument. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) states that an appellant's argument "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Further, "[a]n issue that is merely listed or included in a vague allegation of error is not 'argued' and will not satisfy the requirements of the rule." *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010). Failure to comply with these requirements results in forfeiture. *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56. Based on the foregoing, the twins forfeited this argument.

¶ 55                                    5. *Due Process*

¶ 56    We reiterate that the twins rely on their arguments raised under subsection 2-209(a) to support their contention that there are no due process concerns to invoke personal jurisdiction over Caroline pursuant to subsection 2-209(c). For example, under a heading entitled "The Due Process Catch-all," the entirety of their argument for this subsection provides:

"As shown above, [the twins] did not need to pigeon-hole themselves into a specific long-arm provision. Any conduct by Caroline if jurisdiction comports with due process suffices. The case law previously discussed about purposeful activity and intentionally aiming conduct to affect an Illinois resident's interests compels a reversal here. Clearly when Caroline took steps from Pennsylvania (selling stock/accessing liquid funds/then

20

paying Michael's Illinois obligations here), she knew the effect would be felt upon Plaintiffs here. Again, whether rightful or wrongful ultimately on the merits is of no moment at this juncture. For jurisdictional purposes, the rules are no different than if Judge Brandt had ordered in all caps: NO ONE OTHER THAN [PLAINTIFFS HEREIN] CAN ACCESS THEIR ACCOUNTS TO PAY ANYTHING FOR COLLEGE. Certainly, Caroline knew what she was doing was taking Plaintiffs' custodial accounts and paying for college expenses assigned to her son and that Plaintiffs were Illinois residents."

¶ 57 By stating, "as shown above" (referring to the prior arguments raised under section 2-209(a)), it is clear that the twins are relying entirely on the case law and arguments previously made that we have rejected. Therefore, we have no other arguments to consider and need not engage in any further analysis on this issue.

¶ 58 *6. IUTMA*

¶ 59 The twins also argue that the IUTMA provides jurisdiction over Caroline. They rely on subsections 20/3(b) and (c), which provide in relevant part, as follows:

> "(b) A person designated as custodian under this Act is subject to personal jurisdiction in this State with respect to any matter relating to the custodianship.

> (c) A transfer that purports to be made and which is valid under the Uniform Gifts to Minors Act, or a substantially similar act, of another state is governed by the law of the designated state and may be executed and is enforceable in this State if at the time of the transfer, the transferor, the minor, or the custodian is a resident of the designated state or the custodial property is located in the designated state." 760 ILCS 20/3(b), (c) (West 2016).

¶ 60 The twins contend that subsection "(b) obviously provides personal jurisdiction over a

custodian no matter where she or the minor is or technically where the custodial property is, if the custodian is designated as such by reference to the Illinois version of the Uniform Act."

¶ 61    Determining the meaning of this section presents an issue of statutory construction, which this court considers *de novo*. *Dew-Becker v. Wu*, 2020 IL 124472, ¶ 12. The fundamental rule for statutory interpretation is to ascertain and give effect to the legislature's intent. *Id.* The best indicator of such intent is the plain and ordinary meaning of the statutory language itself. *Id.* When the statutory language is clear and unambiguous, it is given effect as written. *Id.* Further, "we must give effect to the entire statutory scheme rather than looking at words and phrases in isolation from other relevant portions of that statute." *Primeco Personal Communications, L.P. v. I.C.C.*, 196 Ill. 2d 70, 87-88 (2001). Stated another way, statutes should be construed as a whole with each provision evaluated in connection with every other section. *Id.* at 88.

¶ 62    We reiterate that subsection 20/3(b) of the IUTMA provides: "[a] person designated as custodian under *this Act* is subject to personal jurisdiction" in Illinois (Emphasis added.) 760 ILCS 20/3(b) (West 2016). Section 20/1 of the IUTMA provides that "*[t]his Act* shall be known and may be cited as the 'Illinois Uniform Transfers to Minors Act." (Emphasis added.) 760 ILCS 20/1 (West 2016). It is clear that Caroline was not designated as custodian under the IUTMA as the custodial accounts in question were created under Pennsylvania's version of the IUTMA. The twins acknowledge this fact in their pleadings.

¶ 63    Also, when reading section 20/3 as a whole, it is evident that the legislature specifically provided in subsection 20/3(b) that personal jurisdiction applied to a person designated as a custodian under "this Act," which we have already decided is the IUTMA, and subsection 20/3(c) differentiates by providing that it applies to transfers under the "Uniform Gift to Minors Act, or a substantially similar act, of another state." If the legislature intended for subsection 20/3(b) to

22

include persons designated as custodians under any state's version of the Uniform Gift to Minors Act, it would have said so, as it did in subsection 20/3(c). Thus, we conclude that the plain and ordinary meaning of the statutory language only provides personal jurisdiction over persons designated as custodians under the IUTMA. Because Caroline was designated as a custodian under Pennsylvania law, this statute does not provide personal jurisdiction over her in Illinois.

¶ 64                              7. *Various Other Arguments*

¶ 65        We also note that the twins raise numerous sub-arguments that the court improperly turned a jurisdiction motion into one involving motives, credibility, and the underlying merits; relied on improper caselaw; and made comments that were outside the scope of a proper, limited jurisdictional inquiry. However, even if we agreed with these arguments, it does not change our standard of review or our review of Illinois jurisprudence as it applies to this case: the court lacked personal jurisdiction over Caroline *as a matter of law* for the reasons already explained.

¶ 66                                    C. Sanctions

¶ 67        Last, the twins argue that the sanctions ruling should be reversed or remanded for an evidentiary hearing because Caroline and Michael: (1) continuously attempted to have the courts believe that the custodial accounts were college accounts; (2) relied on *res judicata* as a basis for dismissal; (3) stated that Caroline owned the accounts and could do with them as she pleased; and (4) filed a motion for an evidentiary hearing seeking an order to compel them to provide testimony verifying that they wished to continue to pursue the litigation.

¶ 68        Illinois Supreme Court Rule 137 requires that every pleading, motion, and other document shall be signed by at least one attorney of record or a *pro se* party. Ill. S. Ct. R. 137(a) (eff. July 1, 2013). The individual's signature constitutes a certification that he or she has met the duties of reading, reasonable inquiry, and proper purpose. These duties require that (1) the signer read the

23

document; (2) the signer performed a "reasonable inquiry" and has concluded to the best of his or her knowledge, information, and belief that the document is well grounded in fact, supported by existing law, or contains a good-faith basis for modification, reversal, or extension of the law; and (3) the document is not interposed for any "improper purpose" such as harassment, unnecessary delay, or needless increase in the cost of litigation. See *id.*

¶ 69　　If a party or an attorney violates Rule 137, the court may, upon motion or *sua sponte*, impose sanctions upon the individual who signed the filing, the represented party, or both. *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 13. The purpose of Rule 137 is to prevent abuse of the judicial process by claimants who make vexatious or harassing claims based on unsupported allegations of fact or law, not to penalize litigants and their attorneys because they were zealous but unsuccessful. *In re Estate of Hanley*, 2013 IL App (3d) 110264, ¶ 79.

¶ 70　　We review a circuit court's ruling on sanctions for an abuse of discretion. *Commonwealth Edison Co. v. Munizzo*, 2013 IL App (3d) 120153, ¶ 33. An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the court. *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009). "When reviewing a decision on a motion for sanctions, the primary consideration is whether the court's decision was informed, based on valid reasoning, and follows logically from the facts." *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 244 (2000).

¶ 71　　First, the twins argue that Caroline and Michael continuously attempted to have the courts believe that the custodial accounts were college accounts. Their brief references transcript pages where Caroline and Michael's attorney explain that Caroline's intention for creating the accounts was always to pay for the twins' college expenses. We fail to see how this is sanctionable.

¶ 72　　Second, the twins argue that Caroline and Michael's assertion of *res judicata* is

24

sanctionable. We find that the twins have forfeited this argument as they never raised it before the circuit court. Arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal. *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15.

¶ 73    Third, the twins take issue with Caroline's assertion that she owned the accounts and could do with them as she pleased. This issue was not raised in their 2017 motion for sanctions or 2020 *pro se* motion for sanctions. In fact, the alleged statement they complain of did not even occur until 2018. It appears from the record that this statement was made in response to the twins' assertion that the custodial accounts were theirs and *they* could do with the accounts as they pleased. Caroline and Michael's counsel stated:

> "[T]he money is not the girls[']. The money is in an account held by a custodian who may utilize the money in accordance with the law. Counsel cites no language that the money is theirs to do with what they please. I think that's a -- not an accurate statement of the law."

Nonetheless, we find that they forfeited this argument for failure to raise it before the circuit court.

¶ 74    Fourth, the twins argue that Caroline and Michael's motion to request for an evidentiary hearing to verify their intentions to sue was sanctionable. We disagree. This motion followed after attorney Brewer only filed an appearance on behalf of the twins but later filed a motion to withdraw as counsel for Molly. Also, notice of the motion to withdraw was sent to Molly and not the twins. The record provides a reasonable basis for Caroline and Michael's motion. We cannot say that the motion was filed with an "improper purpose" such as harassment, unnecessary delay, or needless increase in the cost of litigation, and the court's decision to deny sanctions was informed, based on valid reasoning, and followed logically from the facts. Therefore, the court did not abuse its discretion when it denied the twins' motion for sanctions.

25

¶ 75                                    III. CONCLUSION

¶ 76            For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

¶ 77            Affirmed.